# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

No. 5:19-CR-256-BO

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| LUIS MIGUEL EGUIA-CEDILLO | ) |

## DECLARATION OF DAN KESSELBRENNER

I, Dan Kesselbrenner, declare under penalty of perjury as follows:

1. My name is Dan Kesselbrenner. I reside at 10 Preston Road, Somerville, Massachusetts. I am the co-author of the treatise, *Immigration Law and Crimes,* which Thomson-Reuters publishes. The Supreme Court cited the treatise in *Padilla v. Kentucky*, 559 U.S. 356, 380 (2010) (Alito, J concurring).

From 1986 until 2019, I was the executive director of the National Immigration Project of the National Lawyers Guild (NIPNLG). From 2008-2010, I also served as a Visiting Clinical Lecturer in Law at the Yale Law School. Most recently, I was Distinguished Practitioner in Residence at the University of Miami School of Law.

I was a frequent faculty member at federal criminal defense continuing legal education seminars sponsored by the Defender Training Group. I trained on the immigration consequences of criminal convictions and representing non-citizen defendants in prosecutions brought pursuant to 18 U.S.C. § 1326. In my career, I have trained approximately 5,000 criminal defense attorneys, immigration lawyers, and state judges.

2. In 2004, Immigration Judge Cassidy ordered Mr. Eguia-Cedillo's removal based on a purported stipulation in which Mr. Eguia-Cedillo waived his right to a hearing.

3. The implementing regulation for stipulated removal orders presumes that, where a noncitizen is represented by counsel, a waiver of hearing rights was submitted knowingly, intelligently and voluntarily, without requiring an Immigration Judge to ascertain whether that is true. However, "[i]f the [noncitizen is unrepresented, the Immigration Judge must determine that the alien's waiver is voluntary, knowing and intelligent." 8 C. F. R. §1003.25(b). In so providing, the regulation protects a respondent from coerced and unknowing waivers.

4. Immigration Judge Cassidy violated 8 C. F. R. §1003.25(b) by failing to determine whether Mr. Eguia-Cedillo's stipulation was voluntary, knowing, and intelligent. The Board of Immigration Appeals has created a rule by publication to remedy the unfairness caused by violating a regulation designed to protect a noncitizen, provided the noncitizen suffers prejudice from the violation. The Fourth Circuit has adopted a similar rule to address an agency's violation of its own rules. *U.S. v. Heffner*, 420 F.2d 809, 811 (4th Cir.1969) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)).

5. For proceedings begun before April 1, 1997, an applicant for voluntary departure had to prove she or he was a person of good moral character, which is defined at 8 U.S.C. §1101(f). For proceedings begun on or after April 1, 1997, Congress created a voluntary departure option with relaxed standards for individuals who did not contest their removal on the merits or seek other types of relief from removal that would enable them to remain in the United States. 8 U.S.C. §1229c(a)(1). Under the relaxed option for voluntary departure, Congress eliminated the requirements that an applicant establish good moral character requirement and demonstrate the

2

financial means to depart the United States. The statute bars eligibility only for a noncitizen deportable for having an aggravated felony conviction or for being deportable on national security grounds. 8 U.S.C. §1229c(a)(1).

6. Mr. Elguia-Cedillo was neither deportable for having an aggravated felony conviction nor on national security grounds. Mr. Eguia-Cedillo was therefore statutorily eligible for voluntary departure when Immigration Judge Cassidy signed his removal order.

7. Awarding voluntary departure at the master calendar hearing does not just benefit the noncitizen respondent. The United States benefits from a voluntary departure because the noncitizen respondent forgoes additional hearings, which conserves the United States' resources. In exchange for this administrative efficiency, Congress created a form of voluntary departure with relaxed eligibility requirements. *See Matter of Arguelles,* 22 I&N Dec. 811, 817 (BIA 1999) (discussing rationale for creating a voluntary option with relaxed standards).

8. An Immigration Judge retains discretion to grant or deny voluntary departure even to a noncitizen that is statutorily eligible for the relief. While such decisions require the Immigration Judge to balance an applicant's favorable equities against adverse factors, the evidence to warrant the favorable exercise of discretion varies depending on the relief sought. *Matter of Mendez-Moralez,* 21 I. & N. Dec. 296, 300 (BIA 1996) (requiring, "the balancing of factors to be undertaken in view of the particular purposes either stated or inherent in the statute"). This means that a noncitizen need demonstrate fewer equities to warrant the favorable exercise of discretion for a voluntary departure request than for other forms of immigration relief that result in lawful permanent residence (e.g. cancellation of removal). More specifically, the Board of Immigration Appeals has ruled that an Immigration Judge has "broader authority to grant voluntary departure" for the relaxed option than for the more formal form of voluntary departure

3

that requires a showing of good moral character. *Matter of Arguelles,* 22 I&N Dec. 811, 817 (BIA 1999).

9. A Department of Justice Office of Inspector General (OIG) report provides statistical support to demonstrate how easy it was for a respondent to obtain voluntary departure. Of the 440 respondents in removal proceedings that requested voluntary departure at the four sites the OIG studied, 334 (75.90%) of the applicants received voluntary departure. "Voluntary Departure: Ineffective Enforcement and Lack of Sufficient Controls Hamper the Process," (No. 99-09, March 1, 1999). https://oig.justice.gov/sites/default/files/legacy/reports/INS/e0399.pdf

10. Although it does not cover 2004 when Judge Cassidy ordered Mr. Eguia-Cedillo's removal, the OIG study provides the best statistical evidence of which I am aware regarding voluntary departure grant rates. The Executive Office for Immigration Review publishes an Annual Statistical Yearbook that provides certain data about removal proceedings but the Yearbook does not indicate what percentage of voluntary departure applicants receive it.

11. In 2004, and today, an Immigration Judge must notify an unrepresented respondent of apparent eligibility for relief from removal, including voluntary departure. 8 C.F.R. §240.11(a)(2).

12. When ICE arrested him in 2004, Mr. Eguia-Cedillo had worked as a laborer for four years, had no negative immigration history, and had close relatives living in the United States. Had the Immigration Judge followed the regulations that 1) mandate an inquiry into the voluntariness and knowingness of a purported stipulation by an unrepresented respondent and 2) informed Mr. Eguia-Cedillo of his apparent eligibility for voluntary departure, Mr. Eguia-Cedillo would have had the opportunity to seek voluntary departure and present his significant equities in support of that request. Based on the statements in Mr. Eguia-Cedillo's affidavit submitted to

4

this court, it is likely that the Immigration Judge would have granted voluntary departure under the standards governing discretion for that form of relief.

I declare under penalty of perjury that the foregoing is true and correct. Executed this sixteenth day of July, 2021.

_____
Dan Kesselbrenner, Declarant